## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

L. L. Y.,

        Plaintiff,

    v.

COMMISSIONER OF THE
SOCIAL SECURITY
ADMINISTRATION,

        Defendant.[1]

Civil No. 22-1710 (RMB)

**OPINION**

**BUMB**, U.S. District Judge:

This matter comes before the Court upon an appeal by Plaintiff from a denial of social security benefits. For the reasons set forth below, the Court shall affirm the decision of the Administrative Law Judge.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Court recites herein only the facts that are necessary to its determination on appeal. Plaintiff filed an application for disability insurance benefits ("DIB"), alleging an onset date of disability of February 1, 2018, on which date she was 55 years old. [Docket No. 9 (hereafter "Plaintiff's Brief"), at 2 (citations omitted).] The parties do not dispute that the applicable period during which Plaintiff alleges a

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.

qualifying disability was from the alleged onset date through June 30, 2018, or the "date last insured."[2]

Plaintiff's claim was denied both initially, on November 7, 2019, and upon reconsideration, on March 9, 2020. [Docket No. 4 (hereafter "Administrative Record" or "AR"), at 23.] Thereafter, Plaintiff requested a hearing before an administrative law judge, which was held on August 13, 2020, before the Honorable Jennifer Pustizzi (the "ALJ"). [*Id.*] Also attending and testifying at the hearing before the ALJ was vocational expert Michael Kibler (the "VE"), and Plaintiff was represented by an attorney, Kathryne Pope, Esq. [*Id.*] Plaintiffs previously worked as a salesperson and a cashier. [Plaintiff's Brief at 2.] She suffers from several physical and mental impairments, including bipolar disorder, depression, anxiety, and bilateral hearing loss, among others. [*Id.*]

On October 28, 2020, the ALJ issued an unfavorable decision, denying Plaintiff's application for DIB. [AR at 2332.] Plaintiff appealed the ALJ's decision internally to the Appeals Council, but her appeal was denied on January 26, 2022. [*Id.* at 2–4.] On March 28, 2022, Plaintiff commenced the present action, requesting judicial review of the Commissioner's final decision and invoking the jurisdiction of this Court pursuant to 42 U.S.C. § 405(g). [Docket No. 1.]

---

[2] As explained by the Commissioner, Plaintiff would qualify for DIB only if she was fully insured for Social Security purposes when she first became disabled. [Docket No. 12 (hereafter "Commissioner's Brief"), at 2 n.1.]  Thus, to be eligible for DIB, Plaintiff must have been under a qualifying disability no later than June 30, 2018.

## II.    THE ALJ'S DECISION

The ALJ concluded that Plaintiff was not disabled for purposes of DIB, finding her capable of making an adjustment to work (other than her past relevant work) as a commercial cleaner, housekeeping cleaner, or egg packer. [AR at 32.]

At step one of the five-step, sequential analysis, the ALJ considered whether Plaintiff had engaged in substantial gainful activity since the alleged onset date of February 1, 2018. [*Id.* at 25.] Alarmingly, the record reveals that Plaintiff did, in fact, work during the alleged period of disability; at the hearing before the ALJ, Plaintiff even testified to working by cleaning houses up through June 2020. [AR at 25.] However, the ALJ ultimately concluded at step one that since "[h]er earnings are unreported and do not appear in internal reports," such earnings are not substantial gainful activity. [*Id.*] The ALJ then proceeded with the analysis.

At step two, the ALJ found that Plaintiff suffers from the following "severe" impairments, which significantly limit her ability to perform basic work activities: depressive disorder, anxiety disorder, bipolar disorder, and bilateral hearing loss. [*Id.*] Also at step two, the ALJ discussed why several of Plaintiff's other physical impairments, which did not "cause any specific residual functional capacity limitation" and thus, were not "severe" for social security benefit purposes, including asthma, back pain, peripheral neuropathy, and bilateral foot pain. [*Id.* at 26.]

At step three, the ALJ found that none of Plaintiff's impairments, or any combination thereof, met or medically equaled the severity of an impairment listed at

20 C.F.R. Part 404, Subpart P, Appendix 1. [*Id.*] Turning to step four, the ALJ

determined that Plaintiff retained the residual functional capacity ("RFC") "to

perform a full range of work at all exertional levels," but that Plaintiff should be

limited to work involving only "simple routine tasks … [and] occasional interaction

with the general public. Oral communication must be face to face and

communication must occur in no louder than moderate noise." [*Id.* at 28.]

At step five, by relying upon the RFC assessment at step four, as well as

testimony from the VE, the ALJ determined that Plaintiff was unable to perform any

of her past relevant work as a retail worker, salesperson, or cashier. [*Id.* at 31.]

However, the ALJ did find that other relevant work exists in the national economy

in significant numbers that Plaintiff could be expected to perform, specifically, as a

commercial cleaner, housekeeping cleaner, or egg packer. [*Id.* at 32.] Thus, the ALJ

ultimately concluded at the final step of the five-step, sequential analysis that during

the relevant period Plaintiff "has not been under a disability, as defined in the Social

Security Act." [*Id.*]

## III.    STANDARD OF REVIEW

When reviewing a final decision of an ALJ regarding disability benefits, the

Court must uphold the ALJ's factual decisions if they are supported by "substantial

evidence." 42 U.S.C. § 405(g); *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing

*Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). "Substantial evidence" means

"more than a mere scintilla" or "such relevant evidence as a reasonable mind might

accept as adequate." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Plummer*, 186 F.3d at 427 (citations omitted). In addition to the "substantial evidence" inquiry, the Court must also determine whether the ALJ applied the correct legal standards. *See Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *see also Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. *Sykes*, 228 F.3d at 262 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382(c)(a)(3)(A). The Act further states the following:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 1382(c)(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's alleged disability status for purposes of social security benefits, as outlined in 20 C.F.R. §§ 404.1520(a)(4)(i-v). The analysis proceeds as

5

follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id.* Otherwise, the ALJ moves on to step two.

> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.

> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.

> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.

> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] ... age, education, and work experience[.]" *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201-02 (3d Cir. 2019) (alterations in original).

## IV.   ANALYSIS

Plaintiff raises a single issue on appeal for this Court's consideration: "[w]hether the ALJ failed to properly evaluate the treating source opinion of Dr. Karen Teitelman and other additional evidence in the record[]." [Plaintiff's Brief at 1.] Plaintiff challenges the justification given by the ALJ at step four, specifically, her finding that Dr. Teitelman's medical opinion – that Plaintiff mental limitations were so extreme that she has no useful ability to function – unpersuasive. [AR at 30.]

Plaintiff argues that because she "failed to cite to any specific, contradictory medical evidence, and instead relied upon her own speculation or inferences," the ALJ's decision is not supported by substantial evidence. [*Id.* at 10.] Further, Plaintiff contends that Dr. Teitelman's findings were consistent with the overall record, including Dr. Teitelman's "own treatment records of the Plaintiff." [*Id.*] In response, the Commissioner rejects Plaintiff's argument outright. According to the Commissioner, not only did the ALJ offer good reasons for her finding that Plaintiff's treating psychiatrist's opinions were not persuasive, but such findings were also consistent with both the medical and non-medical evidence of record. [Commissioner's Brief at 1.]

Dr. Teitelman, Plaintiff's treating mental health physician, has treated Plaintiff for bipolar disorder since September 2015, but the specific, written medical opinion of Dr. Teitelman's that is central to Plaintiff's instant appeal was a Social Security

Disability Psychiatric Report, dated June 18, 2018. [*Id.* at 24954.] In that opinion,

Dr. Teitelman noted that Plaintiff's bipolar disorder and ongoing depression

"severely limit[] functioning." [*Id.* at 251.] Having carefully reviewed the record, the

Court finds that the ALJ did adequately explain why she did not find such medical

opinion persuasive, more specifically, because:

> Dr. Karen Teitelman's opinions of extreme mental limitations … are very inconsistent with the claimant's reported ability to function, travel independently, have friends, have good family relations, and even be employed at a job after the alleged onset date. An individual with all these extreme limitations would have likely had a very significant history of inpatient admissions and crisis intervention, with complete demonstration of inability to function independently, which the claimant did not… [S]he was able to work after the alleged onset date, showing a much greater ability for functioning than stated.

 [*Id.* at 3031.] In addition to Plaintiff's own testimony that contradicted Dr.

Teitelman's findings of severely limited functioning, the ALJ also discussed the

treatment records from Christopher Williamson, Ph.D. from Atlantic Pulmonary &

Critical Care Associates, dated July 3, 2018 (*i.e.*, just after the date last insured

passed). [AR at 306–13.] With respect to neurological and psychological findings,

Dr. Williamson found that Plaintiff presented as awake, alert, and oriented, as well

as had a grossly normal affect. [*Id.* at 308.]

The Court finds that the challenged finding by the ALJ is supported by

substantial evidence. The Court agrees with the Commissioner that Plaintiff's

argument appears to be based on application of outdated regulations and related law.

Indeed, the "treating source rule" is no longer applicable, which previously entitled

the opinions of treating medical providers (like Dr. Teitelman, here) controlling weight in certain circumstances. Instead, the new regulations instruct the ALJ to evaluate the persuasiveness of each medical opinion, and "[t]he most important factors [to] consider … are supportability … and consistency." 20 C.F.R. § 404.1520c(a). As to "supportability," "[t]he more relevant the objective medical evidence and supporting explanations [are] … the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § (c)(1). As to "consistency," a medical opinion will be more persuasive if consistent "with the evidence from other medical sources and nonmedical sources." *Id.* § (c)(2).

The explanation given by the ALJ is sufficient to explain why Dr. Teitelman's opinion was not persuasive. Although the ALJ could have more thoroughly discussed the supportability factor in justifying why Dr. Teitelman's opinion was not internally reliable, the ALJ is not required to use any "magic words." Further, the ALJ relied heavily upon the consistency factor, and clearly discussed why Dr. Teitelman's opinion was inconsistent with the other medical and nonmedical sources in the record before her, including the findings of Dr. Williamson, as well as Plaintiff's own testimony regarding her ability to function and even work during the relevant period. The ALJ's point – that if Dr. Teitelman's findings were accurate, the record would look quite differently – is also well taken. Because the ALJ was able to conclude that Dr. Teitelman's opinion was unpersuasive because it was inconsistent with the overall record, the Court finds that any error from the ALJ not more fully

discussing the supportability factor was harmless.

## V.    <u>**CONCLUSION**</u>

In the end, the Court finds that Plaintiff's attempt to point to a single piece of evidence of record as the basis for appealing the ALJ's decision fails. The Court finds that the ALJ's finding that Dr. Teitelman's opinion that Plaintiff was severely limited in her ability to function due to her mental health limitations is supported by substantial evidence. For these foregoing reasons, the Court will affirm the decision of the ALJ. An accompanying Order as of today's date shall issue.

Date: <u>February 9, 2023</u>                    <u>s/Renée Marie Bumb</u>
                                        Renée Marie Bumb
                                        Chief District Judge